UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81368-CIV-HURLEY

**SURETY BANK,**
    Plaintiff,

vs.

**DUNBAR ARMORED, INC.,**
    Defendant.
_____/

**ORDER GRANTING IN PART & DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

**THIS CAUSE** is before the court on the defendant Dunbar Armored, Inc.'s motion to dismiss the plaintiff's amended complaint [ECF 28], together with plaintiff's response in opposition to the motion [ECF 30] and the defendant's reply [ECF 39]. For reasons stated below, the court has determined to deny the motion in part and grant the motion in part.

**I. Background**[1]

The plaintiff, Surety Bank ("Surety" or "the Bank") alleges that the defendant, Dunbar Armored, Inc. ("Dunbar"), an armored motor vehicle company, misdelivered cash under a change order fraudulently submitted by a bank customer, UR Check Cashing Store, Inc. ("UR Check Cashing" or "the customer"), resulting in the Bank's loss of $820,279.51 paid on forged checks negotiated by UR Check Cashing. The events leading up to this loss are set forth below.

---

[1] In ruling on a motion to dismiss, the court eliminates any allegations in the complaint that are merely legal conclusions, and, where there are well-pleaded factual allegations, "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In addition, the court draws all reasonable factual inferences in favor of the plaintiff. *Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications*, 376 F.3d 1065, 1070 (11th Cir. 2004).

On December 28, 2012, Surety and Dunbar entered into a written "Central Vault Agreement" ("CVA"), under which Dunbar agreed to provide "money room services" for the Bank's customers, i.e. to accept sealed deposit bags at "cash vault services facilities" from Bank customers, and to transport and deliver cash on behalf of Surety for its customers [ECF NO. 19-1]. On April 19, 2013, Dunbar provided Surety with a document entitled "Central Vault Agreement Endorsement to Add/Change/Delete Customer Locations," identifying "UR Check Cashing Store Inc." as a Bank customer located at "1241 S Military Trail STE B," in West Palm Beach, Florida, and authorizing Dunbar to provide that customer with cash services "as indicated above" in accordance with the terms of the CVA between Dunbar and the Bank. Surety alleges that Endorsement, an unsigned copy of which appears as an attachment to the amended complaint [ECF 19-2], was incorporated into the Central Vault Agreement between Dunbar and Surety.

Throughout the course of the parties' dealings, Surety used Dunbar's website to direct the delivery of specific amounts of cash to UR Check Cashing at a specific location, i.e. the 1241 S. Military Trail, West Palm Beach, Florida, address listed on the Endorsement, and, up through July 1, 2013, Dunbar followed those directions by delivering the cash to that address.

On July 1, 2013, UR Check Cashing closed its retail store operations on 1241 S. Military Trail, and moved to 8401 Lake Worth Road, Suite 2-216, Lake Worth, Florida, where it occupied an office located on a second–floor, interior corridor. At the same time, UR Check Cashing directly instructed Dunbar (without alerting Surety) to change its delivery address to the Lake Worth office. Dunbar complied with this direction – without notifying Surety or seeking its authorization for the change order -- and ultimately made eighteen deliveries of cash to UR Check Cashing at its Lake Worth office between July 2 and July 31, 2013 in the total amount of $1,924,000.00.

Surety later discovered that this change in delivery location coincided with UR Check Cashing's launch of a fraudulent bulk checking-buying scheme, resulting in the submission of numerous forged checks to Surety for negotiation. Ultimately, the presentation of forged checks caused Surety to lose $820,279.51 in monies delivered by Dunbar, on behalf of the Bank, to UR Check Cashing at its unauthorized, non-retail Lake Worth location.

According to Surety, had it known that UR Check Cashing had moved its business operation to the interior corridor of a building with no storefront, it would have immediately discovered the fraudulent scheme and ceased all deliveries of cash to it, thus averting the $820,279.51 loss which it claims Dunbar precipitated by its unauthorized misdelivery of cash to UR Cash Checking. In its current complaint, it sues Dunbar for breach of express contract, reformation of contract, and negligence based on Dunbar's implementation of the alleged unauthorized change order and failure to notify Surety of the customer's request for a change in delivery location.

## II.  Motion to Dismiss

Dunbar moves to dismiss the plaintiff's amended complaint for failure to state a claim on which relief may be granted under Rule 12(b) (6) on the following grounds:

(1) the breach of contract count fails to state a claim on which relief may be granted because (a) the Central Vault Agreement, on its face, does not contractually obligate Dunbar to deliver cash on behalf of Surety to specific locations, nor does it obligate Dunbar to notify Surety about customer delivery change orders; (b) the unsigned "Endorsement," purporting to create specific delivery location obligations, cannot serve to alter or amend the CVA because the CVA recites it may only be amended by a "written agreement signed by both parties;" (c) the Central Vault Agreement, on

its face, contains a disclaimer of liability for consequential or incidental losses;[2] (d) the amended complaint does not identity any specific provision of the CVA which has allegedly been breached, but rather makes nebulous references to breaches of the entire Central Vault Agreement; (e) the breach of contract claim is barred by the Florida statute of frauds, § 725.01, Fla. Stat., because the Endorsement purporting to create the specific delivery obligation is unsigned and the CVA recites a performance period of three years;

(2) the reformation of contract claim fails to state a claim on which relief may be granted because (a) Surety has an adequate remedy at law, to wit, its legal remedies against UR Cash Checking, against which it currently holds a final judgment in the amount of $3,199,844.13 predicated on the fraudulent conduct described in the amended complaint; (b) the reformation claim is barred by Florida's statute of frauds, where the CVA creates a three-year term of performance; (c) Surety has not pled facts suggesting "mutual mistake" or "inequitable conduct," the alternative grounds required to state a reformation claim under Florida law; (d) the allegations of the complaint do not describe the alleged "mistake" with particularity in violation of Rule 9(b).

(3) the negligence claim fails to state a claim on which relief may be granted because: (a) Dunbar does not owe a legal duty to protect Surety from the fraudulent activity of its customers; (b) Surety is unable to identify the breach of any duty owed by Dunbar, independent of its contractual obligations, on which a negligence claim may be premised; (c) the CVA on its face includes a disclaimer for negligence or other tort liability for losses caused by Dunbar's performance under the

---

[2] At Section V. B, the CVA provides:
Dunbar shall not be liable for any consequential or incidental losses or damage whether in contract or tort, strict liability, express or implied warranty, or any other basis of liability or claim whether by reason of loss, shortage, non-performance, negligence, delay or any other act or omission or cause of action or allegations whatsoever.

contract, precluding the imposition of any independent tort duty of care; and (d) UR Check Cashing's alleged fraudulent activity constitutes a superseding intervening cause which breaks the chain of legal causation.

### III.  Discussion

### A.  Breach of Contract (Express)

The complaint alleges that the Surety and Dunbar supplemented the CVA with a written Endorsement specifying a delivery location for the Bank's UR Check Cashing customer, and that the defendant breached that Endorsement by making a misdelivery to a different address at the unilateral, unauthorized request of the Bank's customer. Dunbar challenges the existence of a writing which amended the CVA in this fashion (observing that the copy attached to the complaint appears unsigned by Dunbar), effectively denying the plaintiff's allegation of a writing and thereby raising matters outside the pleadings.

As a general proposition, the court may consider documents outside the pleadings in determining a motion to dismiss under Rule 12(b)(6) only if the document is central to the plaintiff's claim and its authenticity is not in dispute. *See Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1340 n. 12 (11th Cir. 2014). In this case, the Endorsement is central to the plaintiff's complaint, but the authenticity of the document is in dispute, where plaintiff alleges the existence of a written agreement between the parties containing promises and obligations regarding the delivery location for UR Check Cashing, and Dunbar questions the existence of a fully executed writing governing that obligation.

Notably, Dunbar does not deny the existence of such a written, fully signed endorsement, but rather insists that Surety should have alleged that the endorsement was signed by all parties and

attached a signed copy of it to its complaint. However, the court finds that imposing such a pleading technicality would be inconsistent with the notice-pleading requirements under the governing federal rules of procedure. The court is obligated to draw all reasonable inferences in favor of the plaintiff, and in doing so infers that the writing described in Count 1 of the plaintiff's amended complaint was indeed signed by both parties, even though the exemplar form attached to the complaint does not reflect all signatures.

With this, the court finds the plaintiff's allegations sufficient to state the existence of a breach of contract, based on Dunbar's alleged misdelivery of cash to UR Cash Checking at an unauthorized location, and further finds the allegations sufficient to avoid application of the Florida statute of frauds. *See e.g. Caterpillar, Inc. v. Usinor Industeel,* 393 F. Supp. 2d 659 (N.D. Ill. 2005).

To the extent that the existence of a signed endorsement, supplementing the CVA in the manner alleged by Surety, is in fact disputed by Dunbar, this is a matter for resolution on a fully developed fact record at the summary judgement phase of the proceedings. The defendant's motion to dismiss the breach of contract claim for failure to state a claim (failure to allege the existence of a signed endorsement) and failure to comply with the statute of frauds shall accordingly be denied, without prejudice for the issue to be renewed at the summary judgment stage.

Finally, with regard to the defendant's assertion of a contractual disclaimer of liability for consequential damages as a complete bar to the Bank's claims, whether in tort or contract, the court does not find, on the face of the pleadings, that the claimed loss (money lost on forged checks submitted by UR Check Cashing in connection with a fraudulent check-buying scheme coordinated with a delivery location change request) falls into the category of "consequential damages." Therefore, this provision is not applicable on the face of the pleadings, and is no defense as a matter

of law to the contract claim asserted by the Bank against Dunbar. *See Hardwick Properties, Inc. v. Newbern*, 711 So.2d 35, 40 (Fla. 1st DCA 1998) (general damages defined as "those damages as may fairly and reasonably be considered as arising in the usual course of events from the breach of the contract itself," in contrast to "consequential damages," which "do not arise within the scope of the immediate transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, with lost profits comprising most common form of consequential damage).

Finally, as to defendant's contention that the complaint is deficient for failure to identify the specific contractual provision allegedly breached, the motion to dismiss is denied. Surety alleges that the CVA between the parties was supplemented and modified by a written Endorsement which obligated Dunbar to deliver cash to UR Check Cashing at a specific location in West Palm Beach, and that Dunbar breached that obligation by misdelivering cash to UR check Cashing at an unauthorized location, without notice to or approval from Surety. This sufficiently identifies the contractual obligation which was allegedly breached. While the existence of a signed Endorsement creating this obligation may be in dispute, this is a matter outside the pleadings which the court cannot consider in ruling on the instant motion.

### B. Reformation of Contract

Surety pleads in the alternative, at Count 2 of its amended complaint, that the parties intended the CVA to include a provision granting Surety sole authority and control over the manner and location of all cash deliveries to UR Check Cashing, and that to the extent the CVA fails to incorporate such a provision, it is the result of an "inadvertent" drafting error on the part of Dunbar, the party who drafted the agreement. On the premise of this "mistake," it seeks a reformation of

7

contract to conform to the parties' intent.

Reformation of contract is proper where there is either a mutual mistake of the parties, or a unilateral mistake by one party coupled with inequitable conduct of the other party. *Bone & Joint Treatment Centers of America v. Healthtronics Surgical Services, Inc.*, 114 So.3d 363 (Fla. 3d DCA 2013). Thus, reformation of contract based on a scrivener's error requries a mutual mistake. *VLX Properties, Inc v. Southern States Utilities, Inc.*, 792 So.2d 504, 507 (Fla. 5th DCA 2001).

In this case, Surety alleges that the omission of a provision granting it sole control over the manner and location of all cash deliveries to UR Check Cashing customer is a scrivener's error on the part of Dunbar. Dunbar, on the other hand, contends that it did not agree to transport and deliver cash to UR Cash Checking at any specific location designated by Surety; that the CVA instead provides that delivery activities shall be controlled by UR Check Cashing's agreement with its armored delivery carrier, and that there is a question as to the existence of any signed, valid Endorsement that modifies the CVA as it relates to Surety's authority to control the delivery location for UR Check Cashing.

Surety, for its part, does not allege that Dunbar in fact agreed to grant Surety sole control over its customers' delivery locations (i.e. that Dunbar intended and agreed to vest Surety with such control), and that the writing ultimately created by the parties neglected to include such a provision as a product of mutual mistake. Rather, it alleges – to the extent the parties' writings are interpreted to exclude such a provision – that the provision was omitted as a product of a nonspecific "scrivener error." The error alleged is thus one of unilateral mistake – i.e. Surety's mistake in failing to insist on a clause in the CVA addressing Surety's control over customer delivery locations. Because unilateral mistake is not a valid ground for reformation of contract, the court shall grant the

8

defendant's motion to dismiss the reformation claim.

At the same time, however, the court observes that the facts alleged in Surety's complaint potentially support a claim for modification of contract, via the parties' course of conduct and subsequent dealings, and therefore shall allow the plaintiff an opportunity to amend its complaint to state an alternative cause of action based on modification of contract. *See generally Evanston Bank v. Brink's Inc.*, 853 F.2d 512 (7th Cir. 1988) (upholding finding that armored car company breached contract with bank, based on evidence that contract was orally modified when bank asked company to make delivery to bank depositor and company agreed, with contract modified again when company agreed to return money to bank rather than deliver it to depositor, and then failed to conform to modification).

### C. Negligence

Dunbar further contends that Surety's negligence claim is barred as a matter of law under Florida's "independent tort rule," and that this claim should accordingly be dismissed with prejudice.

While the "exact contours of this possible [] limitation, as applied post-*Tiara [Tiara Condominium Ass'n v. Marsh & McLenan Cos., Inc.*, 110 So.3d 399 (Fla. 2013)], are still unclear," *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014), the independent tort rule traditionally posits that "where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence." *U.S. Fire Ins. Co. v. ADT Security Services, Inc.,* 134 So.3d 477 (Fla. 2d DCA 2013).

In this case, all of the conduct alleged by Surety arguably relates to its performance under the CVA, and thus theoretically falls within the ambit of a breach of contract claim, thus precluding any separate cause of action for common law negligence (i.e. negligent performance of contract).

While there is some logic to this position, on closer examination it would appear that the conduct described in the complaint raises issue as to whether an armored car service owes its customers, in this case, the Bank, a duty to use reasonable care in the protection of property delivered to it for delivery to another which exists independently of any contractual obligations it may have assumed.

Although not raised by the parties, the court *sua sponte* considers whether a bailor-bailee relationship existed between the parties which might support the existence of an independent, common law duty of due care as well as fiduciary responsibilities owed by Dunbar, as bailee, to Surety.  Under Florida law, a bailment is a "contractual relationship among parties in which the subject matter of the relationship is delivered temporarily to and accepted by one other than the owner. *S & W Air Vac Systems, Inc. v. Dept. of Revenue, State of Fla*, 697 So.2d 1313 (Fla. 5th DCA 1997).  Because the transfer of the property is temporary, a bailment generally contemplates a redelivery of the property by the bailee to the owner or some other person entitled to receive it after the trusts of the bailment have been discharged. *Id.*; *Monroe Systems for Business, Inc. v. Intertrans Corp.*, 650 So.2d 72 (Fla. 3d DCA 1994) (after the purpose of bailment has been fulfilled the property shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it).  Thus, the intended delivery of the goods to third parties - persons entitled to receive the goods – does not preclude a finding that a bailor-bailee relationship existed.  *Papi Express Inc. v. Dosal Tobacco Corp.,* 677 So.2d 1314 (Fla. 3d DCA 1996).

A bailment is a contractual relationship and may result from either an express contract or one implied by law.  *Meeks ex rel. Estate of Meeks v. Florida Power & Light Co.*, 816 So.2d 1125 (Fla. 5th DCA 2002).  A bailment for the mutual benefit of the parties is one in which the parties contemplate some price or compensation in return for the benefits flowing from the fact of bailment,

and necessarily involves an express or implied agreement to that effect. *Armored Car Service Inc. v. First National Bank of Miami,* 114 So.2d 431 (Fla. 3d DCA 1959). The benefit from the transaction need not necessarily involve the passage of money for the use of the property, but may consist of other intangible benefits attendant to the relationship between the parties. *Fireman's Fund Ins. Co. v. Dollar Systems, Inc.,* 699 So.2d 1028 (Fla. 4th DCA 1992).

Where a bailment is for mutual benefit, the bailee is held to the exercise of ordinary care in relation to the subject matter of the bailment, and is responsible only for ordinary negligence, i.e. the bailee is charged with exercising that degree of care which an ordinarily prudent person would bestow upon his own property of a like description. *Peacock Motor Co. of Marianna v. Eubanks*, 145 So.2d 498 (Fla. 1st DCA 1962). On the other hand, if possession of one's personal property passes to another by mistake, the resulting bailment is considered constructive and gratuitous; in this situation, the bailee is liable only for gross negligence. *Armored Car Service v. First National Bank of Miami*, 114 So.2d 431 (Fla. 3d DCA 1959); *Fireman's Fund Ins. Co. v. Dollar Systems, Inc.,* 699 So.2d 1028 (Fla. 4th DCA 1997)*; Brinks Inc. v. Happy Hocker, Inc*. 136 B. R. 883 (S.D. Fla. 1992) (establishment which mistakenly received jewelry shipment was mere "gratuitous bailee" liable only for gross negligence).

Thus, a bailment generally requires the bailee to return the bailed property to the bailor. In some circumstances, an armored car service may assume the duties of a bailee, for example, where a customer temporarily leaves money in care of the armored service as bailee, with the expectation and agreement that it be held and returned directly to the customer, *see e.g. Interstate Brands Corp. v. Cannon*, 708 P.2d 573 (Mont. 1985) (finding bailment where bakery delivered five securely sealed bags to armored car service's driver to be held and returned to bakery three days later pursuant to

written agreement), or to another person or entity designated by the bailor to receive it on its behalf without transfer of ownership. *Winn-Dixie Montgomery Inc. v. Brinks, Inc.*, 298 F. Supp. 366 (D. Ala 1968) (third party depository bank designated for receipt). In this scenario, the armored car service, as bailee for hire, is charged with a common law duty to exercise reasonable care in the protection of property delivered to it, a duty which exists independent of any contract terms, and a *prima facie* case of negligence is established by proof that it received the goods for transportation and failed to deliver them safely.

In this case, the complaint does not allege facts suggesting the existence of a bailment relationship between Surety and Dunbar. That is, Surety has not pled facts suggesting that Dunbar accepted delivery of the cash from Surety, with the understanding, express or implied, that the cash be returned to Surety or delivered to some other person for safekeeping on Surety's behalf. Instead, Surety alleges that Dunbar was instructed to take the cash and release it to UR Check Cashing at its West Palm Beach storefront location. The court infers from the recited facts that Surety delivered the cash to UR Check Cashing in exchange for negotiable instruments (which turned out to be fraudulent) having a corresponding face value.

It is not alleged, nor fairly inferred, that Surety transferred the cash with Dunbar with the expectation that Dunbar would return the money after the expiration of the bailment. It is alleged that Dunbar possessed the cash while it was held for transport and during transport from the Bank to UR Check Cashing; once transported, the cash was transferred to the control of UR Check Cashing. Therefore, the relationship described fails as one of bailment because there are no facts alleged suggesting that Dunbar accepted the cash for safekeeping on behalf of Surety during the duration of the parties' CVA agreement. Without facts showing that Dunbar held the cash as a

12

bailee, Surety fails to make a *prima facie* claim of negligence of bailee, or breach of fiduciary duty as bailee. *See e.g. Fidelity Bank v. Dunbar Armored, Inc.*, 2003 WL 23309326 (Minn. Dist. Ct. 2003) (unpub).

Nor does Surety advance any Florida case law suggesting that an armored car service owes an independent duty to monitor and report on unusual transactions or activities of a banking client's customers, that is, it identifies no authority imposing on Dunbar a duty to serve as "an extra pair of eyes" watching the activities of the Bank's customers. *See Lamm, supra,* 749 F.3d at 947. Under Florida law, when a person's conduct is such that it crates a "foreseeable zone of risk" posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure the conduct is carried out reasonably. *McCain v. Florida Power Corp.,* 593 So.2d 503 (Fla. 1992). The essence of Surety's general negligence claim is that Dunbar breached this general duty of care by failing to monitor and report on suspicious activities of Surety's customers and cash recipients. However, it points to no authority supporting such a nebulous duty under the duties created under Florida's general "foreseeable zone of risk" duty touchstone. *See Wiand v. Wells Fargo Bank, N.A.*, ____ Supp. 3d ____, 2015 WL 518826 (M.D. Fla. 2015).

Since none of the potential sources of duty under Florida law give rise to a duty on the part of Dunbar to monitor or report on suspicious Bank customer activity, Surety's negligence claim fails to state a claim on which relief may be granted. [3]

---

[3] The court's ruling on this duty issue renders it unnecessary to reach the defendant's alternative challenges to the common law negligence claim, including its assertion of the contractual waiver of liability for consequential damages. However, the court questions, in passing, the applicability of such a contractual limitation to independent tort claims. *U.S. Fire Ins. Co. v. ADT Security Services, Inc.*, 134 So.3d 477 (Fla. 2d DCA 2013).

13

### III. Conclusion

It is accordingly **ORDERED AND ADJUDGED**:

1. The defendant's motion to dismiss the breach of contract claim (Count 1) is **DENIED.**

2. The defendant's motion to dismiss the reformation of contract claim (Count 2) is **DENIED WITHOUT PREJUDICE** for the plaintiff to file an amended complaint alleging modification of contract based on a subsequent course of conduct and dealings and breach thereof.

3. The defendant's motion to dismiss the negligence claim (Count 3) is **GRANTED** and the negligence claim (Count 3) claim is **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 25th day of February, 2015.

Daniel T. K. Hurley
United States District Judge

cc. All counsel