UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81368-CIV-HURLEY

**SURETY BANK,**

    **Plaintiff,**

vs.

**DUNBAR ARMORED, INC.,**

    **Defendant.**

_____/

**ORDER DENYING IN PART & GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the court on the defendant Dunbar Armored, Inc.'s motion for summary judgment [ECF No. 85]. For reasons stated below, the court has determined to deny the motion in part and grant the motion in part.

## I. Preface

The plaintiff, Surety Bank ("Surety" or "the Bank") alleges that the defendant, Dunbar Armored, Inc. ("Dunbar"), an armored motor vehicle company, misdelivered cash under a change order fraudulently submitted by a bank customer, UR Check Cashing Store, Inc. ("UR Check Cashing" or "the customer"), resulting in the Bank's loss of $820,279.51 paid on forged checks submitted for negotiation by UR Check Cashing. The Bank sues Dunbar for breach of contract arising out of the alleged misdelivery on three alternative theories: (1) breach of an oral agreement to transport and deliver cash to specific customer locations authorized by the Bank; (2) breach of an express written agreement between the Bank and Dunbar, i.e. the "Central Vault Agreement" ("CVA"), including an endorsement to the CVA entitled, "Endorsement to Add/Change/Delete

Customer Locations," which designated 1241 S Military Trail, Ste. B, West Palm Beach, as the "delivery address" for UR Check Cashing, and recited that "[s]ervices will be provided to the above listed customer on behalf of BANK" in accordance with the CVA, and (3) breach of an express written agreement between the Bank and Dunbar, i.e. the CVA, as modified by the parties' subsequent course of conduct to include a provision authorizing the Bank to control customer delivery locations.

## II. Fact Background[1]

On December 28, 2012, following a course of negotiations between the parties, Surety executed a written "Central Vault Agreement" ("CVA"), submitted by Dunbar, under which Dunbar agreed to provide "money room services" for the Bank's customers, i.e. Dunbar agreed to accept, at a "virtual vault," valuable property from Surety customers intended for delivery to Surety. The CVA defined "money room services" to include "verification of currency and coin contained in shipments received by Dunbar, and preparation of currency and coin orders per Bank's instructions."

The CVA recited an effective date of January 1, 2013, with a three-year term, and restricted any amendments to signed writings, providing: "This Agreement may be altered, amended or superseded only in writing signed by the Parties hereto." The CVA was signed by the Bank on its inception date; Dunbar, however, did not sign the CVA until after this lawsuit was filed.

On April 19, 2013, the Bank supplied Dunbar with a document entitled "Central Vault Agreement Endorsement to Add/Change/Delete Customer Locations," identifying "UR Check Cashing Store Inc." as a "New Deposit Customer" located at "1241 S Military Trail STE B," West

---

[1] The background set forth in this section represents the facts as discerned by the court from the pleadings and the parties' respective evidentiary submissions, in light of the relevant summary judgment standard requiring that the record be viewed in the light most favorable to the nonmoving party.

Palm Beach, Florida ("Endorsement"). The Endorsement is dated "5/16/13," recites a "start date" of "ASAP," and provides in pertinent part:

> By receipt of facsimile of this document Dunbar Cash Vault Services is hereby authorized to provide customer with cash services as indicated above. Services will be provided to the above listed customer on behalf of Bank in accordance with the terms and rates of the Central Vault Agreement between DUNBAR ARMORED INC. and BANK.

The Endorsement does not contain any signature lines or spaces, nor is there any evidence that the form was ever signed by either party.

On July 1, 2013, UR Check Cashing unilaterally contacted Dunbar and asked it to change its delivery location. Dunbar complied with UR Check Cashing's request, without notifying Surety of the change, and, between July 2nd and July 31, 2013, Dunbar made eighteen deliveries of cash totaling $1,924,000 on behalf of the Bank to UR Check Cashing at a new location, specifically, 8401 Lake Worth Road, Suite 2-216, Lake Worth Florida, an unmarked office on a second-floor, interior corridor with no store front.

Surety later discovered that the change coincided with UR Check Cashing's launch of an illegal bulk check-buying scheme. Ultimately, many of UR Check Cashing's bulk purchases included forged and fraudulent checks, which Dunbar successfully presented to Surety for negotiation, causing the loss of $820,279.51 in cash delivered by Dunbar on behalf of the Bank to UR Check Cashing at the Lake Worth location.

Surety contends that had it known about UR Check Cashing's change of address to an interior corridor office with no storefront or signage, it would have interpreted the move as a "red flag" for suspicious activity, which would have triggered an investigation and likely discovery that UR Check Cashing was involved in bulk check cashing and/or participating in a fraud, a discovery

3

which would have prompted the termination of its business relationship with UR Check Cashing.

Before filing this lawsuit, Surety sued UR Check Cashing in Florida state court and obtained a final default judgment in the amount of $3,198,844.13, inclusive of treble damages, a judgment which remains uncollected. On November 6, 2014, Surety filed the instant breach of contract suit against Dunbar.

Under its operative second amended complaint, the Bank asserts the following contract theories:  First, the Bank contends that the Endorsement, incorporated by reference into the CVA, effectively authorized the Bank to control delivery locations for its UR Check Cashing customer, restricting deliveries to the address specified on the form, to wit, 1241 S. Military Trail, Ste. B, West Palm Beach FL 33415.  The Bank contends that the specified delivery address was a material part of the Bank/Dunbar agreement governing Dunbar's transportation and delivery obligations as to this particular Bank customer, and that this term was breached by Dunbar's misdelivery of cash to a different location from that specified on the Endorsement (Count 2).

To the extent the Endorsement is not subject to such an interpretation, or is found unenforceable, the Bank alternatively argues that the written contract between the parties (CVA/Endorsement) was amended by the parties' subsequent course of conduct to include such a provision, which was breached by Dunbar's misdelivery of cash to a different location from that specified by the parties' agreement (Count 3).

Finally, to the extent the Endorsement is not subject to such an interpretation, or is found unenforceable, the Bank alternatively argues that the parties entered an oral agreement conferring authority to control delivery locations on the Bank, an agreement which was breached by Dunbar's misdelivery of cash to a different location from that specified by the parties' agreement (Count 1).

4

### III.  Summary Judgment

### A.  Summary Judgment Issues

Dunbar asserts the following challenges to the sufficiency of the plaintiff's claims in its current motion for summary judgment:

(1) Surety is judicially estopped from bringing this suit because it successfully sued UR Check Cashing Store in state court for the same damages. According to Dunbar, this is tantamount to taking "inconsistent positions," making a "mockery" of the judicial system while effecting an "impermissible splitting" of the Bank's causes of action.

(2) Surety has failed to adduce any evidence of a causal link between the alleged mis-delivery and UR Check Cashing's submission of fraudulently endorsed checks: i.e., by the Bank's own admission, UR Check Cashing could have successfully carried out the same scheme without a change of location. Hence, Dunbar argues there is no evidence that an earlier discovery of the address delivery change would or could have avoided the perpetration of the checking fraud scheme..

(3) Surety is precluded by the statute of frauds from seeking enforcement of the alleged oral contract governing transportation obligations (Count 1) because the contract between the parties was for a term of more than one year. In addition, no action can be brought on the alleged oral agreement governing transportation services, where by the Bank's own admissions the promises made during negotiations regarding transportation obligations all pre-dated the CVA and are hence unenforceable under the parole evidence rule.

(4) Surety cannot state a claim for breach of express contract (Count 2) because it cannot identify any express contractual term in the CVA restricting Dunbar's delivery locations for bank customers, or any other term obligating Dunbar to notify Surety about customer-generated requests

for changes in delivery locations. Instead, according to Dunbar, under the CVA, these activities are governed by the agreement between UR and its armored delivery carrier (Dunbar), i.e, a separate Dunbar/UR Check Cashing contract controls Dunbar's delivery and transportation obligations vis a vis UR Check Cashing, not the Dunbar/Bank contract. As to the Endorsement, which restricts deliveries to UR Check Cashing to a Military Trail, West Palm Beach location, Dunbar contends that this instrument is unenforceable because it is unsigned by either party.

(5) Surety's claim for breach of express contract, based on an asserted modification arising out of the parties' subsequent course of conduct (Count 3) is unsustainable because Surety adduces no evidence that Dunbar ever accepted the alleged modification and no evidence of independent consideration for the alleged modification.

B. **Summary Judgment Standard**

Summary judgment is appropriate if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp v. N. Crossarm Co.*, 357 F.3d 1256 (11th Cir. 2004). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party on that issue. *Id.* at 1260. In ruling on summary judgment, the court must view all the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004).

Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings -- through the use of affidavits,

depositions, answers to interrogatories and other evidence -- and designate specific facts showing that there is a genuine issue of fact for trial. *Celotex Corp v. Catrett*, 477 U.S. 317 (1986). In reviewing the evidence, the Court does not weigh the evidence or make findings of fact, but rather, limits its role to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v Amway Corp*, 323 F.3d 920, 924 (11th Cir. 2003).

### IV. Discussion

### A. Estoppel

The Court summarily dispenses with Dunbar's contention that Surety is judicially estopped from bringing these claims by reason of its prior lawsuit and judgment for damages against UR Check Cashing, and related contention that the instant suit affects an impermissible "splitting" of Surety's causes of action arising out of the subject loss. The Bank is free to pursue claims against all parties that caused or contributed to its losses, and it is not required to bring all claims in one lawsuit.

That UR Check Cashing has already been held liable for the same claimed loss in a prior state court lawsuit does not preclude a separate suit against Dunbar for its part in contributing to that loss. Dunbar is free to pursue a third party action against UR Check Cashing for contribution on losses for which it may be held accountable in this lawsuit; at the same time, if the Bank were to recover damages in this lawsuit against Dunbar, any future efforts to execute on its judgment against UR Check Cashing would be subject to offset for amounts previously charged and recovered against Dunbar. Concepts of judicial estoppel simply have no application to the current suit.

### B. Causation

Regarding the alleged evidentiary lapse on causation, there is testimony from Bank officials indicating that the Bank would have chosen a different course of action in dealing with UR Check

Cashing had it known that UR Check Cashing had moved its operations to a second floor, interior corridor office having no sign or storefront. It is for a jury to determine the credibility of this testimony, and to determine whether it is more likely than not that an early discovery of the "red flag" signaled by this behavior would have led the Bank to investigate and discover UR check Cashing's fraudulent bulk check- cashing scheme in time to avoid or minimize the losses flowing from it.

### C. **Breach of Express Contract**

The key issue on the breach of express contract claim (Count 2) is whether the parties entered into a binding written contract which limited Dunbar's deliveries to Bank customers to physical locations controlled by the Bank. On this claim, the Bank contends that the provisions of the written contract (CVA) and its incorporated Endorsement control the obligations of the parties in this respect, and that Dunbar's breach of its contractual obligation to honor the specific delivery directions of the Bank as to UR Check Cashing renders it liable for all foreseeable losses arising from that breach, including the monies paid by the Bank on fraudulent checks submitted for negotiation by UR Check Cashing.

It is undisputed that Dunbar did not execute the CVA until after this lawsuit was filed. Nevertheless, Dunbar has consistently taken the position that the CVA is a valid and enforceable contract between the parties; it urges simply that the CVA does not impose any transportation and delivery obligations on Dunbar, vis a vis Bank customers, because the parties agreed these services would be governed by separate contracts between Bank customers and their chosen armored carrier service providers. In this case, for example, UR Check Cashing contracted with Dunbar to provide armored carrier services, and Dunbar contends it is this Dunbar/UR Check Cashing contract which

controls its delivery obligations to UR Check Cashing – not the Bank/Dunbar contract.

Further, while Dunbar acknowledges that "Endorsement" to the CVA contains restrictive language concerning delivery locations for UR Check Cashing, it contends that this document is not a valid or enforceable part of the parties' agreement because it is unsigned, and the CVA requires that any modifications or supplementations to its terms be made in writing signed by the parties. Dunbar also contends that the Endorsement, in any event, is not the controlling contact governing its delivery obligations to Bank customers.

### 1. Enforceability of Unsigned Endorsement

The first issue presented, therefore, on the Bank's breach of express contract claim, is whether the course of conduct of the parties indicates there was a valid contract restricting delivery locations for the Bank's UR Check Cashing customer, despite the absence of signature on the Endorsement.

Under Florida law, it is settled that a meeting of the minds of the parties or mutual assent on all essential elements is a requisite to the existence of an enforceable contract. *Barnes v. Diamond Aircraft Indus. Inc.*, 499 F. Supp. 2d 1311, 1316 (S.D. Fla. 2007), quoting *The Greater New York Corp v Cenvill Miami Beach Corp.,* 620 So.2d 1068 (Fla. 3d DCA 1993). Because mutual assent may be shown by the parties' conduct, an unsigned contract may be binding and enforceable where the parties perform under the contract. *Seigel v. NewAgeCities.Com, Inc*., 920 So.2d 1274 (Fla. 4th DCA 2006); *Consolidated Resources Healthcare Fund I, Ltd. v Fenelus,* 853 So.2d 500 (Fla. 4th DCA 2003); *Integrated Health Services of Green Briar Inc. v Lopez- Silvero*, 827 So.2d 338 (Fla. 3d DCA 2002)(contract may be binding on party despite absence of its signature; the object of signature is to show mutuality or assent, but these facts may be shown in other ways, including conduct of the

9

parties); S*osa v Shearform Mfg*., 784 So.2d 609 (Fla. 5th DCA 2001).

The relevant inquiry here, then, is whether the Endorsement contained all the essential terms of the parties' agreement respecting Dunbar's delivery obligations on behalf of the Bank to UR Check Cashing, and whether the parties intended the Endorsement to be a binding contract governing Dunbar's delivery obligations, despite the absence of signatures. To discern that intent, the court looks to the words and deeds of the parties as objective manifestations of their intent under the given circumstances. *Adjustrite Systems, Inc. v. GAB Business Services, Inc*., 145 F.3d 543 (2d Cir. 1998). On the current record, there is evidence of the parties' performance of the obligations described in the Endorsement, in the form of multiple deliveries made by Dunbar to UR Check Cashing at its Military Trail, West Palm Beach address pursuant to on-line directions submitted by the Bank, together with Dunbar's issuance of receipt confirmations to the Bank confirming that delivery had indeed been made to UR Check Cashing in compliance with those directions; this conduct continued for at least a two-month period of time (May 2913 – June 2013), and is reasonably interpreted as manifesting the intent of the parties to be bound by the Endorsement.

At the same time, Dunbar does not present any evidence that the parties intended to continue negotiating the terms of the Endorsement, as they relate to the Bank's authority to control delivery locations for its customers. Nor does it supply any evidence that the Endorsement at issue is the type of contractual supplement or appendix that is usually committed to a separate executed contract. On this backdrop, the Court finds there is at least a genuine issue of material fact as to whether the Endorsement reflected all essential terms of parties agreement respecting Dunbar's delivery and transportation obligations toward UR Check Cashing, and whether the parties intended the Endorsement to be binding in the absence of a full executed document. In addition, the Court finds

10

genuine issues of material fact as to whether the delivery location specified in the Endorsement was a material term of the parties' contractual agreement. Accordingly, whether the Endorsement creates enforceable contractual obligations pertaining to Dunbar's delivery obligations toward UR Check Cashing which were breached in this case cannot be resolved on Dunbar's motion for summary judgment.

## 2. Other Contracts

Dunbar alternatively argues that, regardless of existence of valid, enforceable CVA and incorporated endorsement, the CVA/Endorsement is not the contract that governs its delivery and transportation obligations toward UR Check Cashing; rather, it contends these obligations are governed by a separate contract between UR Check Cashing and Dunbar, its designated armored carrier service. As support for this contention, it cites to a provision of the CVA stating "[t]he contracts for performing armored carrier services are between the Customers [i.e. Surety's customers] and their armored carriers." With this, Dunbar contends there is no evidence from which a rational fact finder could conclude Dunbar breached the CVA/Endorsement in the manner alleged by Surety, because neither the CVA nor the related Endorsement govern Dunbar's delivery obligations to UR Check Cashing.

In other words, Dunbar contends delivery of cash from the Bank to UR Check Cashing was made under the Dunbar/UR Check Cashing contract, not under the Bank/Dunbar contract, and that the Bank can therefore bring no claim for breach of the Bank/Dunbar contract for damages arising out of the alleged misdeliveries. The Court rejects this contention as legally invalid and factually unsupported by the record.

First, there is no evidence that when UR Check Cashing contacted the Bank seeking cash deliveries that it requested the deliveries be made under the UR Check Cashing/ Dunbar contract. Further, there is no evidence that the Bank ever mentioned UR Check Cashing's contract – or suggested that it was acting as UR Check Cashing's agent -- when it contacted Dunbar and instructed it to make cash delivery arrangements to UR Check Cashing.

From the facts on record and all reasonable inferences drawn from those facts, it is apparent that all parties, including Dunbar, were operating under the assumption that the Bank/Dunbar contract controlled the delivery obligations of Dunbar toward Bank customers. The Court accordingly concludes that the Bank/Dunbar contract (including the Endorsement) controls the determination of the rights and liabilities of the parties in this action. *See Evanston Bank v. Brink's Inc.*, 853 F.2d 512 (7th Cir. 1988).

### D. Breach of Express Contract (Modification Theory)

The Bank alternatively argues that even if the Endorsement is not interpreted to authorize the Bank to control and restrict delivery locations for UR Check Cashing, the parties, via a subsequent course of conduct and dealings modified the CVA/Endorsement to include such a term (Count 3). Here, the Bank points to evidence that it routinely submitted on-line directions to Dunbar requesting deliveries to UR Check Cashing at a specific location in West Palm Beach, and that Dunbar regularly complied with those requests and issued written delivery confirmations indicating that delivery had been made to the address specified.

Florida law recognizes an exception to a "no oral modification clause" where an oral modification *is* accepted and acted upon by the parties, and failure to enforce the modification "would work a fraud on either party." *Okeechobee Resorts LLC v EZ Cash Pawn, Inc.,* 145 So.3d

989 (Fla. 4th DCA 2014), citing *Prof. Ins. Corp v Cahill*, 90 So.,2d 916 (Fla. 1956). This exacting standard requires "clear and unequivocal" evidence of a mutual agreement for modification. *Fidelity & Deposit Co. of Maryland v Tom Murphy Construction Co.* 674 F.2d 880 (11th Cir. 1982). Florida law similarly recognizes that a contract may be modified by a subsequent course of conduct, despite a contract provision limiting amendments to signed writings, where there is evidence that the parties accepted and acted on the alleged modification, and the party seeking to enforce the modification provided additional consideration for the modification. *See* EZ *Cash Pawn,* and cases collected, *supra; Rhodes v BLP Assocs, Inc.,* 944 So.2d 527 (Fla. 4th DCA 2006).

Upon careful review of the record, the court finds genuine issues of material fact on the question of whether the parties, by their subsequent course of conduct, evinced their mutual consent to imposition of delivery location restrictions by the Bank, and whether any modification of the CVA/Endorsement evinced by such activity was supported by independent consideration, so as to create an additional, enforceable term of contract by modification.

### E. Breach of Oral Contract

With regard to Bank's alternative argument that the parties entered a verbal agreement which controlled delivery obligations of Dunbar, specifically authorizing the Bank to control and restrict locations, an agreement allegedly made prior to entry into the CVA, the Court agrees that the parole evidence rule precludes the enforcement of any such pre-contract oral promises, and that the Bank's claim for breach of oral agreement governing delivery obligations of Dunbar based on this theory is appropriately disposed of by summary judgment.

That is, because a valid written contract exists between the parties, the Bank cannot seek enforcement of additional, related verbal promises allegedly made before the contract was executed

13

under application of parole evidence rule precepts. Accordingly, the Court shall grant the defendant's motion for summary judgment on the breach of oral contract claim.

### III. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The Court finds, at a minimum, that there are disputed issues of fact as to whether the parties intended to be bound by the Endorsement, as well as disputed issues of fact as to the materiality of the delivery location specification contained in the Endorsement. Thus, the Court finds disputed issues of material fact on the ultimate question of whether Dunbar is in breach of a material term of an express, written agreement between the parties, and accordingly **DENIES** the defendant's motion for summary judgment on Count 2 (breach of express contract).

2. The Court further finds disputed issues of fact on the alternative issue of whether the parties achieved a modification of the CVA/Endorsement, by a subsequent course of conduct, which conferred authority on Bank to control delivery locations for its customers. Accordingly the Court **DENIES** defendant's motion for summary judgment on Count 3 (breach of express contract claim/modification).

3. The Court finds the Bank's alternative claim for breach of oral agreement based on alleged pre-contractual verbal representations and other communications between the parties precluded by application of parole evidence rule precepts. Accordingly, the Court **GRANTS** the defendant's motion for summary judgment on Count1 (breach of oral agreement).

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 27th day of October, 2015.

_____
Daniel T. K. Hurley
United States District Judge

cc. all counsel